IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRANCISCO RAMIREZ-ALVAREZ
et al.,

    Plaintiffs,

v.    Civil Action No.# 01:09cv1306

AURORA LOAN SERVICES, LLC
et al.,

    Defendants.

FILED JUL 21 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Plaintiffs instituted this action by filing a Complaint, on August 18, 2009, in the Circuit Court for Fairfax County, against Aurora Loan Services, LLC, AEGIS Wholesale Corporation1, Mortgage Electronic Registration Systems, Inc., Draper and Goldberg, PLLC, the Trustee and unknown certificate holders and entities holding an interest in the subject property. Plaintiffs set forth six counts in the Complaint against Aurora: Count I - Violation of the FDCPA, Count II - Declaratory Judgment, Count IV - Quiet Title, Count V - Injunction, Count VI - Fraud and Count VII - Due Process Violations. On November 19, 2009, Aurora removed the action to federal court pursuant to 28 U.S.C. §1331.

On February 10, 2006, Francisco Ramirez-Alvarez purchased the property known as 8112 Keeler Street, Alexandria, VA 22309 (the "Property").

To effectuate the purchase, Mr. Ramirez-Alvarez executed two Promissory Notes and two Deeds of Trust, the latter of which granted a security interest in the Property to the lender, AEGIS Wholesale Corporation. At closing, Mr. Ramirez-Alvarez executed a First and Second Deed of Trust and First and Second Promissory Note. The closing documents listed AEGIS Wholesale Corporation as the lender, Michael Milchak as trustee and Mortgage Electronic Registration Systems as beneficiary.

The First Promissory Note was in the amount of $436,000.00 and the Second Promissory Note was in the amount of $109,000.00. The First Promissory Note has an allonge attached, executed in blank, by AEGIS Wholesale Corporation. Subsequent to the execution of the closing documents, the ownership of the First Promissory Note was transferred to a securitized trust, U.S. Bank, N.A., in trust for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-3, in which investors purchased an interest.

Aurora Loan Services, LLC is the current holder of the First Promissory Note. Aurora Loan Services, LLC was the servicer of the loan as of April 1, 2006. In October 2008, Mr. Alvarez-Ramirez became delinquent in his mortgage payments. In 2009, Draper & Goldberg and Aurora contacted Mr. Alvarez-Ramirez regarding his default under the terms of the Note and Deed of Trust. Mr. Alvarez-Ramirez failed to bring his mortgage loan

current, despite demand. Mortgage Electronic Registration Systems, on January 2, 2009, filed a "Deed of Appointment of Substitute Trustee" with the land records of Fairfax County. The Deed of Appointment of Substitute Trustee identifies Draper & Goldberg as the substitute trustee. The foreclosure of the property occurred on May 4, 2009. On June 25, 2009, Aurora, as purchaser of the Property at the foreclosure sale, instituted an Unlawful Detainer action in the General District Court for Fairfax County to remove the Plaintiffs from the Property.

A hearing on the Unlawful Detainer Action was held in the General District Court for Fairfax County on August 19, 2009. The Court granted possession of the Property to Aurora. Mr. Ramirez-Alvarez appealed the General District Court decision on August 31, 2009. A consent order, granting possession of the Property to Aurora was entered on December 10, 2009.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); In re Apex Express Corp., 190 F.3d 624, 633 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. If

the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. See FED. R. CIV. P. 56(e); Celotex, 477 U.S. at 324. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. See Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact" (citing Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001)). Indeed, a trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 317).

Plaintiffs' remaining claims in the Amended Complaint are for Declaratory Judgment (Counts I and II), Quiet Title (Count IV) and Violations of the Fair Debt Collection Practices Act (Count V). Plaintiffs' claims are based on arguments that fail as a matter of law; namely that (1) the defendants lacked the authority to foreclose under Virginia's non-judicial foreclosure statutes and (2) that the loan securitization process has split the Note from the Deed of Trust making it unenforceable and/or credit default swaps related to the securitization of the notes have already satisfied the Plaintiffs' mortgage obligations.

Declaratory relief is inappropriate because (1) the

foreclosure of the Property has already occurred, (2) Plaintiffs fail to set forth plausible facts showing their entitlement to declaratory relief and (3) MERS had the authority and ability to enforce the terms of the security instruments.

Federal Rule of Civil Procedure 57 states that the federal rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. FED. R. CIV. P. 57. Under the Declaratory Judgment Act, 28 U.S.C. §2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party in seeking such declaration, whether or not further relief is or could be sought." Declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued. See The Hipage Co, Inc., 589 F. Supp. 2d at 615.

In the present matter, Plaintiffs ask the Court to void the foreclosure "Deed of Sale" and declare that none of the defendants have any right, title, or interest in the First Note. However, the Property was foreclosed on May 4, 2009, as a result of Mr. Ramirez-Alvarez's default of his mortgage loan obligation. Therefore, as the alleged wrong or questionable conduct has already occurred (the foreclosure), a declaratory relief is inappropriate in this matter.

Notwithstanding the Plaintiffs' untimely request for

declaratory relief, their argument that the defendants lacked the authority to enforce the terms of the security instrument fails in light of the security instruments themselves. The Deed of Trust states that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender"s successors and assigns. MERS is the beneficiary under this Deed of Trust." It also provides that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including but not limited to the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and cancelling this Security Instrument." Further, the Deed of Trust states that the Lender, at its option, may from time to time remove trustee and appoint a successor trustee to any trustee appointed hereunder."

In executing the Deed of Trust, Mr. Ramirez-Alvarez agreed that MERS, filling the dual roles of beneficiary and nominee for the lender, had the right to foreclose on the property and take any action required of the lender, such as the appointment of substitute trustees.

Plaintiffs' argument that the defendants could not demonstrate standing to institute the foreclosure because they

could not prove Article III injury fails in light of the Virginia non-judicial foreclosure statutes. Under Plaintiff's theory, every foreclosing party would have to prove its "standing" or authority in court and prior to foreclosure, and would be unable to do so if the loan is securitized. As a threshold matter, Plaintiff misuses the term "standing" in referring to a secured party's "authority" to foreclose upon a property, rather than its actual meaning of a party's standing to file an action in state court. These arguments fail to recognize that both Federal Rule 17 and "standing," as termed by Plaintiff, are irrelevant to Defendants' authority to initiate non-judicial foreclosure proceedings.

Further, Plaintiff's legal theory contradicts Virginia's well-established status as a non-judicial foreclosure state, as well as the authority vested in a trustee under Virginia law to foreclose and sell property that is provided as security for a loan. See VA. CODE §§ 55-59.1-59.4. Under these procedures, in the event of default by a borrower, a trustee under a Deed of Trust may "declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same . . ." VA. CODE § 55-59(7). These procedures are also set forth in the Deed. Plaintiff's Complaint acknowledges that Defendants complied with these

procedures when the appointed substitute trustee sent demands for payment and foreclosed on the Property.

The Plaintiffs have set forth only conclusory statements in support of their double recovery theory. Plaintiffs allege that the Defendants have benefitted from double or even triple recovery as:

> . . . the applicable securitized mortgage pool has already been paid out by one or more of the following: i.) credit enhancement policies, ii.) over-collateralization, iii.) interest rate swaps, iv.) loan loss reserves pay-outs, v.) mortgage default insurance policies pay-outs, vi.) credit default swaps, and/or vii.) other credit derivatives. These payouts have satisfied in whole or in part the alleged indebtedness which is the subject of this Complaint.

Plaintiffs only set forth conclusory statements in support of their double recovery theory without any specific facts suggesting that any pay outs actually occurred or that they satisfied the Plaintiffs' obligation under the loans. Plaintiffs have failed to set forth a plausible claim for relief as to the Counts I and II requesting Declaratory Relief.

Plaintiffs have failed to state a plausible basis for Quiet Title relief. Plaintiffs' sole underlying argument in support is their faulty legal conclusion that they are the only party to this matter that can prove legal and equitable ownership interest in the Property . "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various claims against that

title." Maine v. Adams, 672 S. E. 2d 862, 866 (Va. 2009). A party asserting a quiet title action must plead that they have superior title to the property. Id.

The Plaintiffs make no factual showing that the debt was forgiven, cancelled, or fully paid. Indeed, they acknowledge in the Complaint that their interest in the Property is subject to a lien to AEGIS. The facts of the Amended Complaint fail to plausibly suggest that the Defendants have no rightful claim to the Property or that the Plaintiffs have superior title. This allegation is a legal conclusion not entitled to the assumption of truth. See Iqbal, 129 S. Ct. at 1940. Further, Plaintiffs cite no legal authority supporting the assertion of unenforceability and this allegation contradicts the terms of the Deed and Virginia law.

"Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." VA. CODE §8.3A-203(b) (2009). The Deed of Trust states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." The language of the Deed indicates that the parties contemplated subsequent transfers of the Note and that the Note and the Deed could be sold together. With each transfer, the right to enforce the Deed passed along with the

Note from transferor to transferee. As such, Plaintiffs' argument that the right to enforce the instrument is lost due to the loan securitization process is incorrect.

Plaintiffs' FDCPA Count against Aurora must be dismissed because Aurora's role as a mortgage loan servicer in this matter does not fall under the ambit of the FDCPA. Section 1692a(6) of the FDCPA limits application of the act to "debt collectors," defined as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 U.S.C. § 1692f(6)] such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include-- …
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).

The provisions of the FDCPA generally apply only to debt collectors, and debt collectors do not include consumer's creditors, mortgage servicing companies, or assignees of debt, so long as the debt was not in default at the time it was assigned. Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003)(citing Perry v. Stewart Title Co., 756 F.2d 1197 (5th Cir. 1985)). See also, Baliey v. Security Nat'l Servicing Corp., 154 F.3d 384, 386-388 (7th Cir. 1998); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir. 1996). Additionally, the legislative history of the FDCPA, as cited to in Scott v. Wells Fargo Home Mortg., Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003), upholds the contention that mortgage servicing companies are not debt collectors under the FDCPA when the debt was not in default at the time it was obtained: "[T]he committee does not intend the definition to cover. . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing. . ." quoting S. REP. No. 95-382, 3-4 (1977).

As such, Aurora is not subject to the provisions of the FDCPA. Aurora has acted as the servicer of the first mortgage loan, since April 1, 2006 and, as such, is not a debt collector as defined and controlled by the FDCPA. Furthermore, based on the date servicing began and the Plaintiffs" payment history, it is clear that the debt, when assigned, sold or transferred to Aurora

was not in default. As Aurora is a mortgage loan servicer which received the debt in question while it was not in default, the FDCPA does not apply in this situation.

For these reasons, Defendant Aurora's Motion for Summary Judgment should be GRANTED. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 21, 2010